**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



/s/ Russ Kendig
**Russ Kendig**
**United States Bankruptcy Judge**

**Dated: 07:02 PM June 3, 2015**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| STEVEN WESLEY DREIBELBIS, | ) | CASE NO. 14-61483 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION (NOT** |
| | ) | **INTENDED FOR PUBLICATION)** |
| | ) | |

  The current matter is before the court following the chapter 7 trustee's filing of the final account and application for compensation. After Steven Wesley Dreibelbis ("Debtor") filed for chapter 7 bankruptcy protection, Josiah L. Mason ("Mason") was appointed as the chapter 7 panel trustee to oversee Debtor's case. Mason, acting as trustee, hired himself, via employment of the law firm Mason, Mason & Kearns ("Mason & Mason"), to provide legal services to Debtor's bankruptcy estate. After careful review, the court finds a portion of the legal fees requested by Mason & Mason are normal trustee duties, and therefore cannot be separately billed as legal fees. Mason & Mason's legal fees will be reduced from the original requested amount of $1,340.00 to $660.00.

  The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and/or (B).

  This opinion is not intended for publication or citation. The availability of this opinion, in

1

electronic or printed form, is not the result of a direct submission by the court.

## Facts

Debtor filed for chapter 7 bankruptcy relief on June 30, 2014. After filing, Mason was appointed as the chapter 7 panel trustee to oversee Debtor's case. Shortly thereafter, on August 6, 2014, Mason filed a motion (which the court granted) to employ Mason & Mason as legal counsel to Debtor's bankruptcy estate at a rate of $200.00 per hour for any legal action "required as a result of liquidation of property of the estate." Mason is a partner at Mason & Mason.

Debtor's bankruptcy case is ordinary, lacking extraordinary circumstances requiring unusual work. Debtor's bankruptcy petition lists real property with a value of $281,240.00 and personal property valued at $72,080.00. For liabilities, Debtor listed secured claims of $332,593.64, relating mostly to mortgages on two different pieces of property, and unsecured claims of $73,499.21, with the majority consisting of debts from Debtor's contractor business. Debtor claimed an exemption in his real property, completely protecting his home equity. Debtor also claimed exemptions in much of his personal property, but Mason was able to recover $7,340.00 for distribution to creditors, the majority from the liquidation of Debtor's firearms, vehicles, and a forklift. Of this amount, Mason proposed to pay administrative expenses of $1,480.00 to himself for trustee duties and $1,340.00 to himself via Mason & Mason for attorney fees, with the remainder available for creditor distributions.

On March 3, 2015 Mason & Mason filed an application with the court seeking approval of 6.70 hours of legal work at an hourly rate of $200.00. However, of the money requested, a significant portion arguably relates to work that is part of a trustee's statutory duties, not legal work necessitating additional bankruptcy estate expenses. First, Mason & Mason billed .85 hours relating to an objection to Debtor's "tools of the trade" exemption in a Ford F–350 truck. Approximately one month later, after Debtor's response to Mason & Mason's objection explained the case law, Mason & Mason withdrew the objection. Mason & Mason, after clearing up the "tools of the trade" exemption, spent 1.25 hours negotiation with Debtor's attorney over the proper valuation of Debtor's non-exempt personal property, and one hour preparing and filing an agreed order setting out the agreed valuations. Additionally, Mason & Mason filed an objection to a creditor's motion for relief from stay, asking for additional time to determine if equity exists in Debtor's real property. After reviewing an appraisal of Debtor's real property, Mason & Mason withdrew the objection. Mason & Mason also requests 1.10 hours for the preparation and filing of routine orders relating to the employment of an appraiser. Finally, Mason & Mason billed .75 hours for "Review of file re: foreclosure," giving the court little insight into the work completed. A similarly confusing entry lists .50 hours for the "Review of Exemptions and telephone call to Atty. Christopher Camboni re: foreclosure," giving the court little indication of the breakdown of the legal fees between the two unrelated activities.

2

## Law & Analysis

Before the court will compensate a bankruptcy attorney for representing a debtor or a trustee, §§ 329 and 330 of the United States Bankruptcy Code ("the Code") require the attorney to file a fee request with the court. If the court determines that the attorney's "compensation exceeds the reasonable value of [the services provided], the court may cancel any such agreement, or order the return of any such payment." 11 U.S.C. § 329(b). Federal Rule of Bankruptcy Procedure 2016(a) implements § 329(b), requiring attorneys, before receiving payment, to set forth the following information in a court filing: "(1) the services rendered, time expended, and expenses incurred, and (2) the amounts requested." Additionally, if the court finds that the services rendered by an attorney are not commensurate with the fees charged, the court may, on its own motion, "award compensation that is less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2); In re Coy Farms Inc., 417 B.R. 17, 21–22 (Bankr. N.D. Ohio 2009). The Sixth Circuit has described a reasonable attorney fee as "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004). The attorney making the fee request bears the burden of proof, by a preponderance of the evidence, to show that the fees requested are appropriate. In re Cody, 2010 WL 3167394, at *1 (Bankr. N.D. Ohio 2010); In re Birky, 296 B.R. 480, 484 (Bankr. C.D. Ill. 2003). "A bankruptcy court is afforded broad discretion in determining attorney fees." Thomas v. Robinson (In re Robinson), 189 Fed. App'x 371, 373 (6th Cir. 2006).

To determine the reasonableness of an attorney fee, the court begins with the lodestar method. Boddy v. U.S. Bankr., W. Dist. of Ky. (In re Boddy), 950 F.2d 334, 337 (6th Cir. 1991); In re Coy Farms, 417 B.R. at 22. To arrive at an appropriate fee, the lodestar method multiplies the reasonable amount of hours necessary to complete a legal task with a reasonable hourly rate. Gonter v. Hunt Valve Co., Inc., 510 F.3d 610, 616 (6th Cir. 2007); In re Coy Farms, 417 B.R. at 22. Based on the court's experience, Mason & Mason's hourly fee of $200.00 is reasonable. Based on Mason & Mason's descriptions of the tasks completed, 6.70 total billable hours is also reasonable. Therefore, under the lodestar analysis, Mason & Mason's proposed attorney fee of $1,340.00 is appropriate.

However, the lodestar fee is not final, as it remains subject to modification. In re Coy Farms, 417 B.R. at 23. The United States Bankruptcy Code includes a nonexhaustive list of factors a court should consider when determining the appropriateness of a legal fee, such as:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the services were rendered toward completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity,

3

>       importance, and nature of the problem, issue, or task
>       addressed; [and] . . .
>   (F) whether the compensation is reasonable based on the
>       customary compensation charged by comparably skilled
>       practitioners in cases other than cases under this title

11 U.S.C. § 330(a)(3). Courts have also evaluated a number of other factors, such as the "the novelty and difficulty of the issues; . . . the amount involved and the result obtained; [and] the results in similar cases." In re Kieffer, 306 B.R. 197, 205 (Bankr. N.D. Ohio 2004).

     Additionally, even if fees are otherwise reasonable after completion of a lodestar analysis and making any required modifications, an attorney still may not charge legal fees to the bankruptcy estate for work contained within the trustee's statutory duties. 11 U.S.C. § 328(b); In re Kieffer, 306 B.R. at 208–10. Based on § 326 of the Code, a trustee's fees in a chapter 7 case are capped at a percentage of the assets distributed to creditors. However, because there are no statutory limitations placed on the legal fees that can be accumulated in a bankruptcy case, a trustee's unchecked delegation of trustee duties to an attorney "creates a potential vehicle by which the statutory limitation on trustee compensation might be effectively circumvented." Id. at 209 (quoting In re Howard Live Pipeline Supply Co., 253 B.R. 781, 787 (Bankr. E.D. Tex. 2000). Fears over attorney compensation in bankruptcy are only heightened when the trustee hires himself as the attorney. However, even in the face of legitimate conflict of interest concerns regarding the delegation of work between the trustee and the trustee-as-attorney, the bankruptcy code nevertheless explicitly allows the trustee to provide legal services, stating that "[t]he court may authorize the trustee to act as attorney . . . for the estate if such authorization is in the best interest of the estate." 11 U.S.C. § 327(d); In re Kieffer, 306 B.R. at 209; In re Howard Love Pipeline Supply Co., 253 B.R. at 788. The House Report associated with § 327(d) makes it very clear that "[t]he purpose of permitting the trustee to serve as his own counsel is to reduce costs." H.R. Rep. No. 95–595, at 329 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6285. For example, a trustee–attorney is already familiar with the facts of a debtor's bankruptcy case, eliminating duplicative case review. Additionally, only the trustee, acting in his dual trustee–attorney capacity, need attend certain events, instead of requiring both the trustee and a separate attorney. See generally In re Kieffer, 306 B.R. 197. Even with these, along with many other potential cost savings, dual attorney/trustee employment represents a chance for misuse of estate assets, especially because legal fees are generally paid by the bankruptcy estate, making each attorney payout cause an associated reduction in creditor distributions, unless the legal fees adequately increase the value of the bankruptcy estate. In re Coy Farms, 417 B.R. at 21–22; 3 Collier on Bankruptcy, ¶ 330.02[2][c][i] (Alan N. Resnick & Henry J. Sommers eds., 16th ed. 2013). As noted above, to combat these ills, the Code grants the court authority to adjust attorney fees.

     Unfortunately, the line between a trustee duty and a legitimate legal expense is blurry. The Code provides some guidance, as under § 704(a):

> "The trustee shall—

> (1) collect and reduce to money the property of the estate for which
> such trustee serves, and close such estate as expeditiously as is
> compatible with the best interests of the parties in interest;
> (2) be accountable for all property received; . . .
> (4) investigate the financial affairs of the debtor;
> (5) if a purpose would be served, examine proofs of claims and
> object to the allowance of any claim that is improper;
> (6) if advisable, oppose the discharge of the debtor;
> (7) unless the court orders otherwise, furnish such information
> concerning the estate and the estate's administration as is requested
> by a party in interest; [and] . . .
> (9) make a final report and file a final account of the administration
> of the estate with the court and with the United States trustee . . .

While this list adds clarity, the classification of numerous common bankruptcy activities remain unclear. For example, a denial of discharge under § 704(a)(6) is classified as a trustee duty, but often requires extensive legal research and analysis. In order to deal with these questions, some courts have adopted a test where any action requiring a law license is classified as an attorney fee. In re Lexington Hearth Lamp & Leisure, LLC, 402 B.R. 135, 143–44 (Bankr. M.D.N.C. 2009) (collecting cases). However, because the vast majority of chapter 7 trustees are also attorneys,[1] a bright-line definition based on the need for a law license is unnecessarily narrow. In a previous decision of this court, both "routine" and "traditional and unproblematic" matters, even if attorney involvement is required, should normally be completed by a trustee. In re Kieffer, 306 B.R. at 207. "Routine" matters "are those activities involving relatively standardized notices, objections and motions that occur regularly in bankruptcy," such as "[a] motion for turnover of a tax refund," "[a]n objection to claims of exemption," or "[a]n objection to a motion for relief from stay." Id. "Traditional and unproblematic" matters, on the other hand, are those actions that require a greater amount of sophistication than "routine" matters, but still "occur regularly and [do] not involve unique applications of the law or intricate and involved financial details." Id. Examples of "traditional and unproblematic" matters include "[p]reference actions in which neither the facts nor the application of the law is unusually complicated" or "[t]ransfers of assets for less than fair consideration and other avoidance actions in which neither the facts nor the application of the law is unusually complicated." Id. Absent an unusual showing, actions within either In re Kieffer category are trustee duties.[2] The In re Kieffer test balances the reality that most chapter 7 trustees are attorneys that often employ legal skills during the normal course of their trustee duties, but still allows legal fees when complex and unusual issues arise.

Turning to the current case, Mason & Mason's .35 hours spent reviewing an appraisal of Debtor's real property is clearly part of a trustee's normal duties under § 704(a)(1) and/or (4), and therefore will be disallowed. In re Lexington Hearth, 402 B.R. at 144 (collecting cases); see

---

[1] Every chapter 7 panel trustee currently practicing before this court is an attorney.
[2] Other courts have adopted fact-based discretionary tests similar to In re Kieffer, only allowing attorney fees when a task "require[s] special expertise beyond the expertise that is expected of an ordinary trustee." In re Lexington Hearth, 402 B.R. at 144 (collecting cases).

5

also In re Polk, 215 B.R. 250, 253 (Bankr. M.D. Fla. 1997); In re Jebco, Inc., 44 B.R. 81, 82 (Bankr. W.D. Ky. 1984); U.S. Dep't of Justice, Exec. Office for the U.S. Tr., Handbook for Chapter 7 Trustees, 4–3 to 4–5 (2012) (hereinafter "Trustee Handbook"). Mason & Mason also request 1.25 hours for discussions with Debtor's attorney regarding the valuation of Debtor's non-exempt personal property. These fees fall within § 704(a)(1), as personal property valuations are central to a trustee's requirement to "collect and reduce to money the property of the estate." In re Lexington Hearth, 402 B.R. at 145. Other expense descriptions contained within Mason & Mason's fee application are unclear. For example, Mason & Mason request .75 hours for the "Review of file re: foreclosure," a description that likely encompasses the time Mason & Mason spent evaluating the facts behind Debtor's foreclosure,[3] but the description is not sufficiently clear and will be denied. In re Kusler, 224 B.R. 180, 187 (Bankr. N.D. Ok. 1998) ("[T]he trustee must provide detailed time records and descriptions of services performed which establish that the services for which compensation is sought are legal in nature"); In re Meadows Operations, Inc., 2007 WL 2915813, at *4 (Bankr. D. Utah 2007). A separate fee entry requests .50 hours for "Review of exemptions and telephone call to Atty. Christopher Comboni re: foreclosure." The court is unable to determine the amount of time spent on each unrelated source. Because the party requesting payment of an attorney fee bears the burden of proof, and because the review of a debtor's exemptions is traditionally a trustee task, the fee application's lack of clarity causes the fee to be denied. In re Kieffer, 306 B.R. at 206; In re Kusler, 224 B.R. at 187.

Many of Mason & Mason's other fee requests represent items that, at least initially, appear to more closely span the line between trustee and attorney duties. First, Mason & Mason spent .55 hours drafting, and then later withdrawing, an objection to a creditor's motion for relief from stay. The motion was not complicated, simply asking the court for more time to determine if equity exists in the property. An objection to a motion for relief from stay is a "routine" trustee matter under In re Kieffer. See also In re Howard Love Pipeline, 253 B.R. at 792–93. Mason & Mason's objection contains no unusual complexity, is very short, is within a trustee's normal expertise, and therefore will be disallowed.[4] Mason & Mason also billed .85 hours for reviewing, objecting to, and finally withdrawing an objection to Debtor's claimed exemptions. Exemption objections are classified as "routine" in In re Kieffer, and are also included within a trustee's duties by the Code and the Trustee Handbook. 11 U.S.C. § 704; Trustee Handbook, at 4–4 to 4–5. Mason & Mason's exemption objection relates to Debtor's claim of a Ford F-350 as a "tool of

---

[3] Even if Mason & Mason provided a more precise description, the legal fee would still likely be denied as a trustee duty under § 704(a)(1).

[4] The court also notes that while Mason & Mason's objection to a creditor's motion for relief from stay is denied as a normal trustee duty, there is also a question of whether filing a motion, and later withdrawing that same motion, provides value to the bankruptcy estate. Under both 11 U.S.C. § 330(a)(4) and Sixth Circuit precedent, the work performed by an attorney must be "reasonably likely to benefit the debtor's estate" before the court will allow any associated fees. 11 U.S.C. § 330(a)(4); In re Robinson, 189 Fed. App'x at 374; In re McLean Wine, 463 B.R. at 847–48. "The pertinent question is not whether the services performed by the professional conferred an actual benefit upon the estate; but whether, when viewed under the circumstances in existence at the time, the services were reasonably calculated to benefit the estate." In re Kennedy Mfg., 331 B.R. 744, 748 (Bankr. N.D. Ohio 2005). While courts should abstain from engaging in a 20/20 hindsight analysis, the result obtained by the attorney's work remains a factor in the court's decision. In re McLean Wine, 463 B.R. at 847–48. Therefore, the court will closely scrutinize the fees of any attorney who consistently files and later withdraws motions that do not create any value for the bankruptcy estate, even if such motions appear reasonable when initially filed.

the trade" under O.R.C. § 2329.66(A)(5). While a truck is not classified as a "tool" in normal everyday language, prior Northern District of Ohio bankruptcy decisions have allowed such a classification. In re Gaydos, 441 B.R. 102, 106–07 (Bankr N.D. Ohio 2010). While the legal analysis is not overly complex, digesting legal opinions is a duty more appropriately reserved for an attorney, especially when the outcome is not immediately clear and the issue is unusual. The court will allow the attorney fee relating to Debtor's "tools of the trade" exemption.[5] Finally, Mason & Mason have requested 1.10 hours for preparing and filing routine orders to appoint and pay an appraiser, as well as filing the appraiser's report. While the court has identified numerous opinions disallowing attorney fees for such routine orders, the court is not inclined to do so at present. In re McLean Wine Co., 463 B.R. 838, 848 (Bankr. E.D. Mich. 2011); In re Lexington Hearth, 402 B.R. at 145; In re Jebco, 44 B.R. at 82.[6]

## Conclusion

Based on the above analysis, Mason & Mason have requested the payment of attorney fees for work more consistent with trustee duties. In total, the court will deny 3.40 hours of Mason & Mason's time, resulting in a fee reduction of $680.00. Therefore, the court approves 3.30 hours of Mason & Mason's fee application, resulting in a total payment of $660.00.

It is so ordered.

# # #

**Service List:**

**Josiah L Mason**
Canton
153 W Main St
PO Box 345
Ashland, OH 44805-2219

**Erin R Kick**
KICK & GILMAN
133 South Market St.
Loudonville, OH 44842

**Mason, Mason & Kearns**
153 W Main St

---

[5] The court notes that objecting to exemptions will normally be a "routine" trustee duty. In re Adelson, 239 B.R. 627, 629 (Bankr. S.D. Fla. 1999); In re Polk, 215 B.R. 250, 253–54 (Bankr. M.D. Fla. 1997). However, Debtor's use of a truck as a "tool of the trade" is somewhat unusual, with an answer that is not immediately clear, taking the matter outside a trustee's normal duties.

[6] The court advises attorneys to only submit fee applications for items that clearly fall outside a trustee's normal duties, as attorneys should attempt to avoid increased judicial scrutiny.

P O Box 345
Ashland, OH 44805